UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMONAE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00178-JRS-TAB |
| | ) | |
| DR. KNOLL, | ) | |
| LT. ERNEST, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendant Dr. Noll's Motion for Summary Judgment, Denying Lt. Ernest's Motion for Summary Judgment, and Directing Further Proceedings**

Plaintiff Demonae Lewis, at relevant times incarcerated at Pendleton Correctional Facility, had a painful toothache for nearly three months before he saw dentist Dr. Noll, who immediately extracted the tooth. Mr. Lewis alleges that the delay shows deliberate indifference on the part of Dr. Noll and Lt. Ernest, the correctional officer in charge of escorting inmates to medical appointments. The defendants have moved for summary judgment. For the following reasons, Dr. Noll's motion for summary judgment, dkt. [78], is **granted**, and Lt. Ernest's motion for summary judgment, dkt. [85], is **denied**.

**I. Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the

1

nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the nonmoving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Court views the facts in the light most favorable to the nonmoving party and all reasonable inferences are drawn in the nonmovant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

## II. Facts

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered to be undisputed except where disputes are noted.

### A. The Parties

At all times relevant to the complaint, Mr. Lewis was incarcerated at Pendleton Correctional Facility (Pendleton). Dr. Noll was the only onsite dentist at Pendleton and was responsible for supervising the dental department and providing dental care to the approximately 1800 inmates incarcerated there. Dkt. 80-2 at ¶¶ 3, 6 (Noll affidavit). Lt. Ernest was a correctional officer stationed in G-Cell House, an administrative segregation unit where Mr. Lewis was housed. Dkt. 85-2 at ¶¶ 3–4 (Ernest affidavit).

### B. IDOC Dental Services

The Indiana Department of Correction's (IDOC) Division of Health Services has a Dental Services Manual that describes how dental services are provided to inmates. Dkt. 85-3. According to the manual, the Health Services Department appoints a Chief Dentist to oversee dental care for IDOC. *Id.* at 5. All inmates are required to have a dental screening within seven days of arrival to

IDOC and a dental examination within 30 days of arrival. *Id.* at 7. During the examination, the dentist must establish a treatment plan that includes the dentist's assessment of the urgency of the planned treatment. *Id.*

Inmates who want dental appointments must complete a healthcare request form. *Id.* Nursing staff review those forms and route dental-related requests to Dental Services. *Id.* Dr. Noll is not responsible for scheduling appointments with inmates, as he does not receive the healthcare request forms. Dkt. 80-2 at ¶ 15. Rather, a Dental Services staff member must review a routine dental service request within seven days, and a routine appointment should be scheduled within six weeks. Dkt. 85-3 at 7. Inmates with dental emergencies should be scheduled for immediate care and are considered the highest priority for scheduling. *Id.* at 9–10. Dental emergencies include "severe dental pain not responsive to simple oral analgesic medication." *Id.* at 9. If a waiting list develops and persists for more than two weeks, a description of the waiting list and a plan for eliminating it is supposed to be sent to the Chief Dentist. Dkt. 85-3 at 7.

Inmates housed in G-Cell House must be escorted when being moved anywhere within the facility, including to dental appointments. Dkt. 80-2 at ¶ 9. Because Dental Services staff members determine the order by which inmates are scheduled for dental appointments, correctional officers have no authority to expedite when an inmate is seen. Dkt. 85-2 at ¶¶ 8, 10. The only way a correctional officer can compel a doctor or dentist to provide immediate attention to an inmate is during a "Signal 3000" incident. Dkt. 85-2 at ¶ 11. A "Signal 3000" incident is a medical emergency when an inmate is either unresponsive or unconscious. *Id.* at ¶ 12.

### C. Mr. Lewis's Dental Care

Mr. Lewis had an intake dental exam on May 21, 2018, where dentist Robert Somesan identified two teeth that were experiencing decay. Dkt. 80-2 at ¶ 7. Dr. Somesan did not provide instructions for treatment of the decaying teeth. *Id.*

Beginning in September 2018, Mr. Lewis began complaining about a toothache and requested to be seen by a dentist. *Id.* at ¶ 6.

#### i. Mr. Lewis's Healthcare Request Forms

Mr. Lewis submitted his first healthcare request form on September 23:

> I've been havin serious pain in my mouth on my right side. One minute it's cool, then it hurt really bad plus my metal thing came out of my toothe so now it messes with it. It's hard to eat too. All the nurses say there is nothing they can do about it. It's the dentist responsibility.

Dkt. 85-4 (errors in original). Healthcare staff responded, "Will schedule."[1] *Id.*

Mr. Lewis submitted a second healthcare request form on October 5 complaining that his tooth had chipped and it "hurt bad." Dkt. 85-5. The response—signed on December 19—detailed a series of events. Dental Services received the request on October 9.[2] *Id.* An appointment was scheduled for December 10, but it was cancelled because there was no escort. *Id.* The appointment was rescheduled for December 19, and Mr. Lewis's broken tooth was extracted on that date.[3] *Id.*

---

[1] There is no date indicating when staff returned the response to Mr. Lewis.

[2] Lt. Ernest erroneously states that the second healthcare request form was both submitted and returned to Mr. Lewis in October 2018. Dkt. 86 at ¶ 17.

[3] Dr. Noll and Mr. Lewis dispute whether tooth five or tooth four was extracted. *See* dkt. 80-2 at ¶ 10 (Dr. Noll testifying tooth four was extracted); dkt. 80-1 at 14 (medical records indicating tooth four was extracted) and 12, 15 (medical records indicating tooth five was extracted); dkt. 83 at 3 (Mr. Lewis arguing tooth five was extracted). Whether it was tooth four or five is not material because there is no dispute that Dr. Noll extracted the tooth that had cracked and was the subject of Mr. Lewis's healthcare request forms. Dkt. 80-3 at 37:2–5.

But before he received the response to the second healthcare request form, Mr. Lewis had filed a third request on November 10 stating he needed his mouth checked out because he had been experiencing "slight pain lately." Dkt. 85-6. In a response signed November 26, healthcare staff indicated that Mr. Lewis was on the list to be seen but they were "waiting on custody to escort you over." *Id.*

Mr. Lewis filed a fourth healthcare request form on December 14, reiterating that he needed dental care to treat the pain in his tooth. Dkt. 89-1 at 3. The response, dated December 18, was "We have not forgot about you. We are waiting for custody to escort everyone over." *Id.*

Mr. Lewis filed a grievance on December 18. Dkt. 80-3 at 70:18–20 (Lewis deposition). The grievance was denied the next day, in part because Mr. Lewis's tooth had been pulled that day. *Id.* at 70:3−24, 71:1−2.

### ii. Lt. Ernest's Involvement

Lt. Ernest testified that Mr. Lewis asked him "in early October 2018" to investigate the request for dental treatment. Dkt. 85-2 at ¶ 15 (Ernest affidavit). Lt. Ernest reached out to medical staff and confirmed that Mr. Lewis was on a list to be seen by the dentist. *Id.* Lt. Ernest testified that Mr. Lewis was released from G-Cell House in November and was at that point out of his supervision. *Id.* at ¶ 16. He testified that Mr. Lewis was placed back into the segregation unit in December but was placed in a housing structure not under his control. *Id.* at ¶ 17. Lt. Ernest never observed signs of a physical ailment such as fever, weight loss, or a swollen face, that would have warranted him initiating a Signal 3000. *Id.* at ¶ 14.

Mr. Lewis's disputes some of Lt. Ernest's version of events. He testified that when he first told Lt. Ernest about the delay, Lt. Ernest told him he was not on the list of inmates to be escorted to Dental Services. Dkt. 80-3 at 47:16–24, 48:1. When Mr. Lewis received the response to his

healthcare request form that stated he was on the list but dental was waiting on an escort, he showed Lt. Ernest the form because Lt. Ernest was responsible for escorts.[4] *Id.* at 72:9–16. Lt. Ernest told Mr. Lewis that he would "call and see what was going on," but he does not know if Lt. Ernest did because nothing happened as a result. *Id.* at 72:16–18. Mr. Lewis believes Lt. Ernest would have called because "he's a pretty good guy." *Id.* at 73:8–9.

Mr. Lewis acknowledges that there was a time in November and December in which he was not on Lt. Ernest's unit. *Id.* at 75:9–13. As he recalled, he was only released from segregation for about a week in November. *Id.* at 67:13–15. There were several days in early December in which Mr. Lewis was in a dry cell and not under Lt. Ernest's control. *Id.* at 73:19–24, 75:10–13. During that time, Mr. Lewis showed his cracked tooth to Captain Mason, Lt. Ernest's supervisor, who emailed healthcare services. *Id.* at 73:23–24, 74:1–2. Captain Mason told Mr. Lewis that Mr. Lewis was on a waiting list and Dental Services would try to get him over as soon as possible. *Id.* at 74:4–7. Mr. Lewis initially testified that Lt. Ernest was not the supervisor on his unit in December, but he then recalled that Lt. Ernest had escorted him to his December 19 dental appointment. *Id.* at 68:1–24, 69:1–11.

Mr. Lewis testified that while only healthcare staff can schedule appointments, Lt. Ernest had the authority to escort any inmate on the list to Dental Services, and Lt. Ernest should have done so because he was aware that Mr. Lewis was in pain and it was his job as custody officer to escort inmates. *Id.* at 76:13–20, 77:6–12.

### iii. Dr. Noll's Involvement

Again, Dr. Noll does not schedule dental appointments and does not personally review the healthcare request forms. Dkt. 80-2 at ¶ 15. The only interaction Dr. Noll had with Mr. Lewis was

---

[4] It is not clear which request form Mr. Lewis asserts he showed Lt. Ernest.

at the December 19 appointment. ¶ 14. Dr. Noll examined Mr. Lewis's cracked tooth and determined that extraction was necessary. *Id.* at ¶ 10. Mr. Lewis consented to the extraction, and the procedure went smoothly. *Id.* at ¶ 11. Dr. Noll observed a possible cavity in another tooth and counseled Mr. Lewis to submit another request form to return to the clinic after he had four weeks to heal from the extraction. *Id.* at ¶ 10. Dr. Noll ordered ibuprofen for Mr. Lewis to help with post-extraction pain and Mr. Lewis's other complaints of dental pain. *Id.* at ¶ 11.

Mr. Lewis submitted a request for another dental appointment on December 24 because he believed he had an infection after the tooth extraction. *Id.* at ¶ 12. An appointment was scheduled for January 9, 2019, but Mr. Lewis did not go because he was no longer in any pain. *Id.* ¶ 13; dkt. 80-3 at 39:5–7. Mr. Lewis did not have another dental appointment at Pendleton because there was "no need to," and he was subsequently transferred to Westville Correctional Facility. Dkt. 80-3 at 16:24, 17:4–6, 40:19–21.

Mr. Lewis alleges that Dr. Noll is liable because he failed to follow the Dental Services Manual to ensure that Mr. Lewis was seen within six weeks of submitting his healthcare request form. Dkt. 83 at 2–3.

### III. Discussion

Mr. Lewis first alerted healthcare staff to his tooth pain on September 23, 2018, but did not see Dr. Noll for dental care until December 19, 2018. Mr. Lewis does not challenge the quality of the care he received at the December 19 appointment. Rather, he alleges that Dr. Noll and Lt. Ernst

were deliberately indifferent to his pain by failing to schedule a dental appointment in a timely manner.

At all times relevant to Mr. Lewis's claims, he was a convicted offender. This means that the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017).

The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019).

"A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Eagan*, 987 F.3d at 695 (internal quotation omitted). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.* "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.* "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

The defendants do not dispute that tooth decay and pain can constitute a serious medical need. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an

objectively serious medical condition because of pain and the risk of infection."). They contend, however, that they were not deliberately indifferent to Mr. Lewis's medical needs.

### A. Lt. Ernest

Lt. Ernest's motion for summary judgment must be denied because there are genuine issues of material fact that preclude judgment in his favor. To determine if a prison official acted with deliberate indifference, we "'look into [the official's] subjective state of mind.'" *Eagan,* 987 F.3d at 695 (quoting *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016)). "[O]bjective recklessness— failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known— is insufficient to make out a claim." *Petties,* 836 F.3d at 728. "Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

Lt. Ernest was aware of Mr. Lewis's tooth pain in early October. Dkt. 85-2 at ¶ 15. Lt. Ernest said he reached out to medical staff and confirmed that Mr. Lewis was on a list, but that was the extent of what he could do absent a Signal 3000 incident. *Id.* at ¶¶ 11, 13, 15. But Mr. Lewis recalls that Lt. Ernest initially told Mr. Lewis that he was not on a list. Further, the healthcare request forms reflect that Dental Staff twice informed Mr. Lewis that they were waiting for custody staff to escort him to the dentist. Dkts. 85-5, 85-6. Mr. Lewis testified that when he showed Lt. Ernest those forms and explained his tooth pain, Lt. Ernest should have escorted him to the dentist. Dkt. 80-3 at 72:9–16, 76:13–20, 77:6–12. Although Lt. Ernest testified that he was no longer responsible for Mr. Lewis in November and December, he does not provide specific dates beyond saying Mr. Lewis was released from G-Cell House "in November." Dkt. 85-2 at ¶ 16. Further, Mr. Lewis testified that Lt. Ernest was the guard who escorted him to his December 19 appointment. Dkt. 80-3 at 69:1–11.

9

There is no dispute that Lt. Ernest knew about Mr. Lewis's dental pain, and a reasonable jury could conclude that he "disregarded a substantial risk of harm" by failing to escort Mr. Lewis to Dental Services or take more affirmative actions to ensure Mr. Lewis was on the schedule to be seen. *Petties,* 836 F.3d at 728. Lt. Ernest repeatedly emphasizes Mr. Lewis's characterization of Lt. Ernest as a "pretty good guy" in support of his argument that he was not deliberately indifferent. Dkt. 86 at 5, 7. But Mr. Lewis need not show that Lt. Ernest was a bad person, only that he "actually knew about the pain and recklessly disregarded or needlessly prolonged it." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020). This much Mr. Lewis has done. Accordingly, Lt. Ernest's motion for summary judgment, dkt. 85, is **denied**.

### B. Dr. Noll

Mr. Lewis alleges that Dr. Noll was deliberately indifferent because he failed to comply with the Dental Services Manual when he didn't schedule Mr. Lewis's dental appointment within six weeks.

Mr. Lewis has presented no evidence that Dr. Noll had any actual knowledge of Mr. Lewis's urgent dental needs before the December 19 dental exam. *Petties,* 836 F.3d at 728. At that time, Dr. Noll, with Mr. Lewis's consent, extracted his tooth and provided him with ibuprofen and instructions to request a follow-up visit to fill a cavity. Dkt. 80-2 at ¶¶ 10–11. It was not Dr. Noll's responsibility to schedule appointments, and he did not review healthcare request forms. *Id.* at ¶ 15. This is consistent with the Dental Services Manual, which states only that "[a] Dental Services staff member shall review routine dental service requests" and schedule an appointment with a dentist. Dkt. 85-3 at 7. The manual further provides that persistent waiting lists should be reported to the Chief Dentist, *id.*, but Dr. Noll was not the Chief Dentist.

A defendant can only be liable for the actions or omissions in which he personally participated. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). Because there is no evidence from which a reasonable jury could infer that Dr. Noll caused or was aware of the delay in scheduling Mr. Lewis's appointment, Dr. Noll's motion for summary judgment, dkt. [78], is **granted**.

### IV. Conclusion

Dr. Noll's motion for summary judgment, dkt. [78], is **granted**. All claims against Dr. Noll are dismissed with prejudice, and the **clerk is directed** to terminate him as a defendant on the docket.

Because there are material issues of fact regarding Lt. Ernest's role in ensuring timely dental care for Mr. Lewis, Lt. Ernest's motion for summary judgment, dkt. [85], is **denied**. The Eighth Amendment claim against him shall proceed to settlement or trial. No partial final judgment shall issue at this time. This matter is set for trial on November 1, 2021, and the final pretrial conference is scheduled for October 14, 2021. The Magistrate Judge is requested to meet with the parties to discuss settlement before the final pretrial conference/trial. The Court prefers that Mr. Lewis be represented by counsel at a settlement conference and trial. The Court has prepared a form motion to be used by indigent litigants seeking the appointment of counsel. The form requests the information necessary for the Court to determine the merits of the motion, and it requires the litigant to acknowledge important conditions of the appointment of counsel. Mr. Lewis shall have **through July 21, 2021**, in which to either return a completed motion for counsel form to the Court

or object to the recruitment of counsel on his behalf. **The clerk** is directed to include a copy of the motion for counsel form with Mr. Lewis's copy of this Order.

    **IT IS SO ORDERED.**

Date:   6/28/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEMONAE LEWIS
178250
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

All Electronically Registered Counsel